**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| TODD MOILANEN and NICHOLAS TALMERS,<br><br>    Plaintiffs,<br><br>v.<br><br>DIMITRI SYLLANTAVOS, TODD MASSEY, and GLOBAL AMERICAN TRANSPORT, LLC | Case No.: 1:25-cv-13515<br><br>Judge: Charles P. Kocoras<br><br>JUTY TRIAL DEMAND |

## DEFENDANT GLOBAL AMERICAN TRANPORT, LLC'S MOTION FOR JUDGMENT ON THE PLEADINGS AND INCORPORATED MEMORANDUM OF LAW

NOW COMES Defendant GLOBAL AMERICAN TRANSPORT, LLC ("GAT"), by and through undersigned counsel, HICKS JOHNSON PLLC and CHALOS & CO, P.C., and pursuant to Federal Rule of Civil Procedure 12(c), respectfully moves this Court to issue a judgment on the pleadings, dismissing Plaintiffs' claims I-XI and XIII in their entirety with prejudice, and grant such other relief as the Court deems just and proper. In support thereof, Defendant GAT provides the following memorandum of law:

**Table of Contents**

**Table of Authorities**................................................................................................................. ii

**PROCEDURAL HISTORY** ........................................................................................................ 1

**LEGAL STANDARD**................................................................................................................. 2

    I.     Plaintiffs fail to state a claim for conversion. ............................................................... 4

        A.     Elements for Michigan statutory conversion. ............................................................ 4

        B.     Plaintiffs failed to allege that the Defendants exerted domain over Plaintiffs' property................................................................................................................................. 5

        C.     A conversion action cannot be sustained for a claim only related to money unless there is a specific return obligation. ................................................................................... 7

        D.     If the court concludes that Illinois substantive law applies, it is well settled law that conversion cannot be brought for a voluntary wire transfer claim.......................... 8

    II.    Plaintiffs fail to plead a cognizable contract from which any obligations could be breached.................................................................................................................................. 9

        A.     Plaintiff fails to allege terms with sufficient specificity. ......................................... 10

        B.     Plaintiff alleges only an agreement to agree. ........................................................... 12

        C.     Plaintiffs' contract-dependent claims are barred by the Statute of Frauds. ......... 12

**CONCLUSION** ........................................................................................................................... 15

# Table of Authorities

**Cases**

*Acad. Chi. Publishers v. Cheever*, 144 Ill. 2d 24 .................................................................. 13

*Alisa A. Peskin-Shepherd, PLLC v. Blume*, 509 Mich. 1046 .................................................. 8

*Allen v. Mich. State Univ.*, 2024 Mich. App. LEXIS 9668 ...................................................... 8

*Appley v. West*, 1985 U.S. Dist. LEXIS 17646 ...................................................................... 14

*Aroma Wines & Equip., Inc. v. Columbian Distrib. Servs., Inc.*, 497 Mich. 337 .................... 5

*Ashcroft v. Iqbal*, 556 U.S. 662 ................................................................................................ 2

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 ............................................................................... 2

*Burkhardt v. Bailey*, 260 Mich. App. 636 ............................................................................. 16

*Cordes & Co., LLC v. Mitchell Co., LLC*, 605 F. Supp. 2d 1015 ........................................... 9

*DiLeo v. Ernst & Young*, 901 F.2d 624 ................................................................................... 3

*Foremost Ins. Co. v. Allstate Ins. Co.*, 439 Mich. 378 ........................................................ 5, 6

*Heritage Broad. Co. v. Wilson Commc'ns, Inc.*, 170 Mich. App. 812 ................................... 13

*Holland v. Fillmore*, 363 Mich. 38 ........................................................................................ 15

*Moulos v. Lucent Techs.*, No. 02 C 550, 2002 U.S. Dist. LEXIS 22231 ................................ 11

*Mt. Hawley Ins. Co. v. Persaud USA Prop. Holdings LLC*, 748 F. Supp. 3d 223 .................. 3

*Pamar Enters. v. Huntington Banks,* 228 Mich. App. 727 ...................................................... 7

*Schimandle v. DeKalb County Sheriff's Office*, 2023 U.S. Dist. LEXIS 85384 ..................... 2

*Securities Fund Services, Inc. v. American Nat'l Bank & Trust Co.*, 542 F. Supp. 323 ....... 10

*United States v. Stafford*, 727 F.2d 1043 .............................................................................. 13

*Van Diest Supply Co. v. Shelby County State Bank*, 425 F.3d 437 ........................................ 9

Wolf v. Riverport Ins. Co., 132 F.4th 515 ................................................................................ 2

*Yash Venture Holdings, LLC v. Moca Fin., Inc.*, 116 F.4th 651 ............................................ 11

**Statutes**

740 ILCS § 80/1 ...................................................................................................................... 13

FRCP 12(c) ............................................................................................................................... 2

FRCP9(b) .................................................................................................................................. 3

MCLS § 566.132(1)(a) ........................................................................................................... 13

MCLS § 566.132(1)(f) ........................................................................................................... 13

WHEREFORE, Defendant GAT, by and through undersigned counsel, HICKS JOHNSON PLLC and CHALOS & CO, P.C., and pursuant to Federal Rule of Civil Procedure 12(c), respectfully moves this Court to issue a judgment on the pleadings, dismissing Plaintiffs' claims I-XI and XIII in their entirety with prejudice, and grant such other relief as the Court deems just and proper. In support thereof, Defendant GAT states as follows:

## INTRODUCTION

Plaintiffs Todd Moilanen and Nicholas Talmers ("Plaintiffs") filed a lawsuit alleging thirteen (13) different causes of action to attempt to undo their financial investment in defendant shipping company GAT. Careful review of the pleadings, however, discloses that Plaintiffs have failed to allege necessary facts for these causes of action with the with the specificity required to make out grounds for liability, particularly under F.R.C.P. 9(b)'s heightened standard for fraud. The Civil RICO allegations under 18 U.S.C. § 1962 against co-Defendants Syllantavos and Massey fail to allege the facts of the predicate offenses or describe a RICO enterprise. Plaintiffs' conversion claims do not satisfy the requirements under Michigan Law and are barred by Illinois law under which conversion claims may not be brought for wire transfers. Plaintiffs' claims relying on contract fall short of alleging a contract with sufficiently definite material terms, on which the parties reached a meeting of the minds. Even if they did, Plaintiffs have failed to allege an agreement that satisfies the applicable requirements of the Statute of Frauds. The remaining claims against GAT, for a request for a declaratory judgment to set aside corporate separateness are all dependent on these underlying causes of action. As a result, these claims are appropriately resolved by judgment in Defendant GAT's favor under F.R.C.P. 12(c).

## PROCEDURAL HISTORY

1

Plaintiffs filed the complaint in this action on November 4, 2025. Doc. No. 1. Defendants filed their answers on December 8, 2025. Doc. Nos. 15-17. Plaintiffs have filed a complaint, Defendants have filed their answers, and there have been no further pleadings or requests to amend, the time is now appropriate to bring a motion for judgment on the pleadings. *Schimandle v. DeKalb County Sheriff's Office*, 2023 U.S. Dist. LEXIS 85384 (N.D.IL 2023).

## **LEGAL STANDARD**

A Rule 12(c) motion for judgment on the pleadings is tested with the same standards as a Rule 12(b)(6) motion to dismiss for failure to state a claim. FRCP 12(c); *Wolf v. Riverport Ins. Co.*, 132 F.4th 515, 518 (7th Cir. 2025). For a complaint to survive either motion, it must be plead sufficiently well to show there is a plausible ground for relief for the plaintiff. If this cannot be shown, the complaint must be dismissed. Essentially, Plaintiff must plead their complaint such that, if every one of their allegations are true, they would be able to show that they are entitled to relief. Satisfying this standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Defendants must be made aware of what it is they must defend against and must at least allege such facts that elevate a given cause of action or claim from being conceivable to at least plausible. It need not be perfect, but it must be a clear argument with some reasonable possibility of success. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, [570] (2007). A well pleaded complaint sees "the plaintiff pleads factual content that allows the court to draw a reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal* 556 U.S. 662, 678.

Federal cases where fraud is an element of a claim require an even higher pleading standard than the generic standards laid out in *Twombly* and *Iqbal*. Federal Rule of Civil Procedure 9(b) establishes that in cases of fraud that the "party must state with particularity the circumstances

2

constituting fraud or mistake." FRCP9(b). In the Seventh Circuit, this typically takes the form of pleading the "who, what, when, where, how" of the alleged fraud. *DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990). Therefore, if the Plaintiffs cannot sufficiently plead these essential elements of a claim for fraud, it is facially defective and must be dismissed.

What is more, courts in other circuits have observed that a Rule 12(c) motion can be especially useful tools for the court when it comes to a contract dispute:

> "Judgment pursuant to Rule 12(c) can be particularly appropriate in breach of contract cases involving legal interpretations of the obligations of the parties." *VoiceAge Corp. v. RealNetworks, Inc.*, 926 F. Supp. 2d 524, 529 (S.D.N.Y. 2013) (collecting cases). This is because "[t]he initial interpretation of a contract is a question of law for a court." *Id.* "If the contract is unambiguous, the Court may award judgment on the pleadings, assuming no material facts are in dispute." *Neopharm Ltd. v. Wyeth-Ayerst Int'l LLC*, 170 F. Supp. 3d 612, 615 (S.D.N.Y. 2016)

*Mt. Hawley Ins. Co. v. Persaud USA Prop. Holdings LLC*, 748 F. Supp. 3d 223, 229 (S.D.N.Y. 2024).

Here, any facts that are in dispute are only in dispute because they have not been properly alleged by Plaintiffs. This would itself be grounds to deny a positive judgment for the Plaintiffs. Considering all these circumstances together, if on grounds of either a failure to state the grounds for the claim, or that the facts, as pleaded, cannot support a judgment in its favor, those claims must be denied, and judgment granted in Defendants' favor.

### **PLAINTIFFS' RELEVANT ALLEGATIONS**

Plaintiff alleges that Defendants created a scheme of fraud and deceit, to con Plaintiffs and many others into investing into an illusory shipping enterprise. Defendants Syllantavos and Massey are natural persons, and the two highest ranking members of Defendant GAT. Doc. No. 1 ¶ 22.GAT itself is a company with a major interest in performing intercontinental shipping. *Id.* at

¶ 21. Plaintiffs allege that Defendants falsely induced Plaintiffs to repeatedly wire them large sums of money, with no intention of honoring their deal and obligations. *Id.* at ¶ 37. Plaintiffs state, among other allegations, that Defendants engaged in a pattern of "racketeering behavior" and used federal mail and wire services in support of this scheme. *Id.* at ¶¶ 70-77.

## ARGUMENT

While Plaintiffs appear to allege that GAT was a RICO enterprise, their complaint does not bring a Count of RICO against Defendant GAT, only its Co-Defendants Syallantavos and Massey. As such, this motion will not address the RICO issues, which will be discussed in Co-Defendants Syllantavos and Massey's motions.

I. **Plaintiffs fail to state a claim for conversion.**

Plaintiffs also bring a claim for conversion, seemingly under Michigan statutory law. Given that this is a federal court, the procedural pleading standards from the Federal Rules of Civil Procedure will still apply, regardless of which state's substantive law this Court decides is applicable. Therefore, despite applying either Illinois or Michigan substantive law for the elements of conversion, the pleading requirements of *Twombly* and *Iqbal* are both firmly still firmly in effect. Therefore, if Plaintiffs fail to properly allege its claims of conversion, relief under Count VII (Conversion) and the corresponding element in Count VIII (Civil Conspiracy) must be denied.

A. **Elements for Michigan statutory conversion.**

Michigan uniquely offers plaintiff's two forms of conversion if they believe that their property has been interfered with, common law and statutory. However, the two forms of conversion track very closely to each other, with the primary difference being the addition of a showing of defendant making use of the allegedly converted chattel in statutory conversion. *Aroma Wines & Equip., Inc. v. Columbian Distrib. Servs., Inc.*, 497 Mich. 337, 355-356 (2015).

4

Common to both forms of conversion is the basic definition of conversion. The Michigan Supreme Court has addressed what specifically constitutes a conversion, referring to the Restatement of Torts' examples of ways in which conversion can occur. *Id.* at 352. However, common amongst all the possible ways to do so, and acknowledged in an earlier state supreme court decision, the most common unifying aspect of conversion in Michigan is that "any distinct act of domain wrongfully exerted over another's personal property in denial of or inconsistent with the rights therein." *Foremost Ins. Co. v. Allstate Ins. Co.*, 439 Mich. 378, 391 (1992). Taken together, Plaintiffs will need to allege facts sufficient to allow for a reasonable inference that Defendants in some way took or used Plaintiffs' property in a way that defied Plaintiffs' own ownership and domain over it.

**B. Plaintiffs failed to allege that the Defendants exerted domain over Plaintiffs' property.**

The most fundamental issue at the core of any conversion case is that the defendant must have prevented the use of plaintiff's property in the way plaintiff wanted it to be used. However, a fatal issue arises when a plaintiff, as here, cannot demonstrate they had actual ownership of the property in question. In *Foremost Ins. Co. v. Allstate Ins. Co.*, an insurance company came up against this requirement in an insurance fraud case when the Michigan Supreme Court determined that an act of arson to one's own property does not constitute conversion, stating

> In each of the cases referred to above, the property converted belonged to another person who had original ownership or possession. In this case, however, the alleged converter owned the item that Allstate contends was converted. We agree with the Court of Appeals in the instant case that "a person can[not] 'convert' his own property," and therefore we reject Allstate's second argument. *Foremost Ins. Co. v. Allstate Ins. Co.*, 439 Mich. 378, 391 (1992).

Any failure to properly allege that Plaintiffs owned the allegedly converted property at the relevant time will require that the conversion claims be dismissed.

5

Here, Plaintiffs have done just that. In their own complaint, Plaintiffs acknowledge that they gave the money and funds to Defendants voluntarily. By wiring money, or writing a check to the Defendants, they gave title to the corresponding amount of money to the Defendants. Every financial transaction set forth in the complaint describes a wholly voluntary transfer of funds. For example, "Pursuant to Defendant Syllantavos' promises . . . Plaintiff Moilanen wired One Million, One Hundred Twenty-One Thousand, Three Hundred Ninety-Nine U.S. Dollars ($1,121,399 USD)". Doc. No. 1 ¶ 41. A similar statement is contained in paragraph forty-three (43). *Id*. at ¶ 43. The other pair of allegations regarding any amount of change in the Plaintiffs' property is in reference to the loans the Plaintiffs gave to Defendant Syllantavos, alleged as "at the request of Defendant Syllantavos, Plaintiff Moilanen agreed to loan an additional One Million U.S. Dollars ($1,000,000 USD) to GAT pursuant to the terms of a written Promissory Note and wire instructions provided by Defendant Syllantavos, on behalf of the Defendants collectively and in concert." *Id*. at ¶ 49. Again, a substantially similar allegation is contained in paragraph fifty-four (54). *Id.* at ¶ 54. All reasonable inferences that can be drawn from these allegations are that the Plaintiffs freely transferred their interest in the money to the Defendants, no more and no less. Once money is exchanged, it is no longer the property of the former owner. In *Pamar Enterprises v. Huntington Banks*, a Michigan Appellate court observed that in respect to a check, "A check is the personal property of the payee. . . However, the drawer of the check may not maintain an action for conversion, because the check represents an obligation of the drawer rather than the property of the drawer." *Pamar Enters. v. Huntington Banks,* 228 Mich. App. 727, 735 (1st Dist 1998). While referring to a paper check rather than a digital transfer, the concept and logic remain the same, that if a payor gives money to a payee, it is no longer their property. To attempt to argue that money

6

used in a way that its former owner does not approve amounts to conversion would be an untenable position.

Plaintiffs have therefore established that they in fact voluntarily gave the property alleged to be converted to Defendants. Because it is not possible for someone to convert their own property, any actions by the Defendants with these funds are therefore, by definition, not conversion.

### C. A conversion action cannot be sustained for a claim only related to money unless there is a specific return obligation.

Even if Plaintiffs could properly allege that the funds given to the Defendants were used in some way consistent with Michigan's standards of conversion, substantive Michigan state law holds there is no cause of action as to conversion of money unless there is an explicit obligation to return the same money. "However there are specific requirements pertaining to when money can be converted: '[W]hen there is not duty to pat the plaintiff the specific moneys collected, a suit for conversion may not be maintained.'" *Alisa A. Peskin-Shepherd, PLLC v. Blume*, 509 Mich. 1046, 1047-1048 (2022). Appellate courts have refined this standard, stating that for money to be the basis of a valid conversion action, "The money must be 'identical money or checks,' not merely a payment." *Allen v. Mich. State Univ.*, 2024 Mich. App. LEXIS 9668, 44 (1st Dept 2024). Therefore, if Plaintiffs have not alleged that such an obligation existed, the claim for conversion must be dismissed.

At no point in Plaintiffs' 28 page and 157 paragraph complaint do they identify a specific provision that creates an obligation to return the specific money given to Defendants. Even if they did, the nature of their transactions is averse to Michigan's approach to conversion. There was no specific allegation that the specific money given to Defendants had to be identified and returned to them. Plaintiff argues that they are entitled to such treatment, but do not clearly identify any

7

facts that can lead to such a belief. All plausible inferences presented by the alleged conversion support that a mere payment could suffice, not the specific money given to the Defendants.

Without an allegation point to a specific obligation to return the particular money provided to the Defendants, there cannot be a reasonable inference that the Plaintiffs are therefore entitled to maintain an action for conversion, either common law or statutory. And even drawing every inference in favor of Plaintiffs, their claim for conversion still falls short.

### D. If the court concludes that Illinois substantive law applies, it is well settled law that conversion cannot be brought for a voluntary wire transfer claim.

To address the issue if Illinois law is determined to govern the claim of conversion, Plaintiffs are even further away from properly pleading their allegations. Illinois state law is well settled on the necessary elements of a claim for conversion. These elements are: 1) a right to the property; 2) an absolute and unconditional right to the immediate possession of the property; 3) a demand for possession; and 4) the defendant wrongfully and without authorization assumed control, dominion, or ownership over the property. *Van Diest Supply Co. v. Shelby County State Bank*, 425 F.3d 437, 439 (7th Cir. 2005). If any showing is lacking, then the claim fails.

Plaintiffs fail on the first element to show that they have a right to any of the money. In paragraphs 41, 43, 49 and 54, Plaintiffs admit that they voluntarily wired the funds in question to the Defendants. Doc. No. 1, ¶¶ 41, 43, 49, 54. This court has previously decided the same issue, stating:

> Defendants argue that they cannot be liable for conversion because the wire transfers were voluntarily made by the Receivership Entities. The Court agrees that the tort of conversion does not fit with the facts of this case. There is no dispute here that the wire transfers were voluntarily made to Mitchell's bank account by the Receivership Entities. There can be no wrongful assertion of dominion and control, and thus no conversion, when property is voluntarily transferred to the defendant by the owner.

8

*Cordes & Co., LLC v. Mitchell Co., LLC*, 605 F. Supp. 2d 1015, 1024 (N.D. Il 2009) (internal citations omitted). Since the Plaintiffs have admitted that their transfer of funds to Defendants was voluntary and intentional, there is no possible showing that they are entitled to the funds in question, much less to immediate possession. Further, they never alleged in their complaint that they made a demand for the funds back, so they fail on the third element as well. Given that the funds were properly delivered to Defendants, they cannot be said to have wrongfully withheld these funds either, so all four elements of the claim fail. Even if Plaintiffs alleged any facts to support any element of Illinois conversion, Illinois does not recognize conversion claims over wire transfers. "Illinois follows the common law rule which does not recognize an action for conversion of intangible rights. Thus, the wire transfer, like a bank deposit, can be considered intangible property. And since it is intangible, an action for conversion cannot be sustained." *Securities Fund Services, Inc. v. American Nat'l Bank & Trust Co.*, 542 F. Supp. 323, 329 (N.D. Il 1982).

For the foregoing reasons, Plaintiffs have failed to state any claims for conversion to be legally cognizable, and so relief for claims of conversion against all Defendants must be denied.

II. **Plaintiffs fail to plead a cognizable contract from which any obligations could be breached.**

Plaintiffs bring five (5) causes of action in contract—Counts III (Fraud), IV (Fraud in the Inducement), V (Breach of Fiduciary Duties), VI (Aiding and Abetting Breach of Fiduciary Duties), VIII (Civil Conspiracy), and XI- XIII (various forms of breach of contract). Only one of these Counts (XII) is directly brought against GAT, however it does rely on the existence of a contract with a co-defendant for GAT to have been involved in, and GAT's involvement with Plaintiffs is informative for the natural Co-Defendants. Therefore, it is necessary to address whether Plaintiffs have properly alleged the existence of a contract. Here again, Plaintiffs fail to allege the facts necessary for a viable claim. Each claim is rooted in obligations created by an

9

alleged contract between the Plaintiffs and Defendants. If, however, no valid and enforceable contract is alleged, each will fail.

Here, Plaintiffs' complaint is facially defective because it asserts numerous causes of action related to a breach of contract or contractually created duties and obligations but never identifies a specific contract or agreement between the parties, particularly one that is in writing. To establish the existence of a contract there must be both consideration and mutual assent to the terms of the agreement by the parties. *Moulos v. Lucent Techs.*, No. 02 C 550, 2002 U.S. Dist. LEXIS 22231, at *5 (N.D. Ill. Nov. 14, 2002). The complaint must identify specific textual content that forms the terms of the offer and agreement. *Id.* at 7. And "while a contract may be enforced even though some contract terms are missing or left to be agreed upon, there is no contract if essential terms are so uncertain that there is no basis for deciding whether the agreement has been kept or broken." *Yash Venture Holdings, LLC v. Moca Fin., Inc.*, 116 F.4th 651, 657 (7th Cir. 2024) (internal citations omitted).

**A. Plaintiff fails to allege terms with sufficient specificity.**

The paucity of the terms alleged is most clear in Plaintiffs' Count XI "Breach of Express or Implied Contract." Plaintiffs state, "Plaintiffs and Defendant Syllantavos were parties to an express and/or implied contract concerning the formation of a separate and new joint venture business partnership among them." Doc. No. 1, ¶ 145. Plaintiffs appear unsure of the nature or existence of the contract they accuse Defendants of breaching. If Plaintiffs cannot articulate what this contract is, it is entirely unreasonable to expect Defendants to defend themselves from an alleged breach of it or determine what its terms were. Plaintiffs also point to a statement in GAT's receipt the relevant transaction:

> RECEIPT OF US $1,121,399" document dated December 6, 2022, which stated among other things that: "The purpose of said amount of United States Dollars One

10

> Million, One-Hundred Twenty-One Thousand, Three-Hundred Ninety-Nine (US $1,121,399) represents the said above person's participation in the acquisition of: [1] MV GAT Feeling and [2] MV GAT Father, in accordance to further terms and conditions to be agreed between the management of GAT and said above Investor. Investor will have to inform GAT of the legal entity that will be used for their respective shareholding in accordance with the agreement between Investor and GAT.

Doc. No. ¶¶42 and 44.

    A contract, whether oral agreement or in writing, must be sufficiently definite as to its material terms to be enforceable. *Yash Venture Holdings, LLC v. Moca Fin., Inc.*, 116 F.4th at 657. Setting aside whether any of the statements pointed to by Plaintiff can be considered "an offer," the terms discussed failed to provide sufficient specificity of the material terms to support enforcement. As the quoted receipt plainly demonstrates, funds transferred were for "participation in" GAT's vessel acquisition "in accordance to further terms and conditions to be agreed between the management of GAT." Significantly, the complaint fails to specify the nature of the "participation" or the resulting interests. Notably, GAT indicated that Plaintiffs had not yet informed it of the "legal entity that will be used for their respective shareholding in accordance with the agreement between Investor and GAT."

    The receipt quoted in the Complaint amply demonstrates that essentially none of the material terms of the arrangement had been agreed on. The insufficiency made plain when the contract alleged here is compared with that deemed insufficient in *Yash*. There, the contract alleged involved a "MOU and Term Sheet list[ing] Baheti/Yash's ownership share as 15 percent in accord with the alleged earlier offer." *Yash Venture Holdings, LLC v. Moca Fin., Inc.*, 116 F.4th at 659. Nonetheless, documents also included statements that the parties had not yet reached an agreement. The Court also noted that whether the ownership interest at issue was to be dilutable was a material term, missing from the complaint alleged. As a result, the contract claim alleged was properly

11

dismissed. *Id.* Here, essentially all the material terms remained unstated. As a result, no enforceable contract has been alleged.

### B. Plaintiff alleges only an agreement to agree.

For an enforceable contract to exist, a meeting of the minds must be objectively discernible based on the parties' conduct. *Yash Venture Holdings, LLC v. Moca Fin., Inc.*, 116 F.4th at 657 (7th Cir. 2024). The allegations set forth in the complaint indicate that any meeting of the minds was an agreement to agree—the parties agreed to decide all of the material terms of investment later. "An agreement to reach an agreement is a contradiction in terms and imposes no obligations on the parties thereto." *United States v. Stafford*, 727 F.2d 1043, 1051 (11th Cir. 1984)

In Illinois, an agreement to agree is unenforceable unless the essential terms are sufficiently definite to allow a court to determine the parties' obligations. The Illinois Supreme held that a contract is unenforceable if the essential terms are so uncertain that there is no basis for determining whether the agreement has been performed or breached. *Acad. Chi. Publishers v. Cheever*, 144 Ill. 2d 24, 30, 161 Ill. Dec. 335, 338, 578 N.E.2d 981, 984 (1991). Michigan too will not enforce agreements to agree that lack all material and essential terms. *Heritage Broad. Co. v. Wilson Commc'ns, Inc.*, 170 Mich. App. 812, 819, 428 N.W.2d 784, 787 (1988).

Plaintiff fails to allege the material terms of an agreement for either a property interest in vessels to be acquired or shareholding in the owner entity. They state in their complaint that these terms were to be agreed upon later and do not allege a subsequent agreement. They have pled the existence of an unenforceable agreement to agree and their claim must, therefore, be dismissed.

### C. Plaintiffs' contract-dependent claims are barred by the Statute of Frauds.

Plaintiff's claims in contract are, as they plead them, also barred by the statute of frauds, both under Illinois and Michigan substantive state law.[1] The statute of frauds makes any agreement falling under certain categories to be void and unenforceable, unless memorialized in writing and signed by the party to be charged. Statutes of frauds function to prevent high value contracts from being concluded without official documentation and allowing a party to make unverifiable claims in the event of litigation over it. In essence to prevent claims like Plaintiff's here.

One of the most universally common categories of agreements subject to Statutes of Fraud are those that cannot be completed within one year of contracting. Both Illinois and Michigan contain this provision in their statutes of frauds. MCLS § 566.132(1)(a); 740 ILCS § 80/1. Additionally, Michigan has an additional option for "an assignment of things in action, whether intended as a transfer for sale, for security, or otherwise." MCLS § 566.132(1)(f).[2]

As no contract or any controlling terms have genuinely been identified by Plaintiffs, Defendants must rely on the bald assertions that Plaintiffs make to piece together what terms of the alleged contract may have existed. Assuming the contract the Plaintiffs assert exists, from the incomplete terms of the agreement hinted at in the complaint, it would not be enforceable. The complaint references a Memorandum of Agreement (MoA) detailing the sale of one of the ships in question to GAT. Notwithstanding that this document provides no evidence of a written contract between Defendant GAT and Plaintiffs, it does, however, demonstrate alleged agreement was meant to extend beyond a single year. They state in part "Defendant Syllantavos represented was

---

[1] While ordinarily affirmative defenses like the statute of frauds are waived if not raised in an answer or responsive pleading, Seventh Circuit law permits exceptions for such a defense to be raised later. "The Seventh Circuit, however, has held that if a defect is apparent on the face of a complaint, it may be raised by a motion to dismiss for failure to state a claim, which may be supported by affidavits." *Appley v. West*, 1985 U.S. Dist. LEXIS 17646, 3 (N.D. Il 1985). Given that the purpose and standards for a Rule 12(c) motion are stated to be identical to a Rule 12(b)(6) motion to dismiss, it stands to reason that the rule in *Appley* should apply. *Wolf v. Riverport Ins. Co.*, 132 F.4th at 518 (7th Cir. 2025).
[2] This has been defined as property for which one can recover in court.

13

'an overall savings of 3% on the rate and an annualized savings of roughly $400,000, *for the 1st year alone*" in one combined loan." Doc. No. 1 ¶ 29. (Emphasis added).

The statement that Plaintiffs are attempting to represent as evidence of fraud in fact reveals that, if their narrative is to be accepted on its face, Plaintiffs intended to consent to a multi-million-dollar investment and business partnership that would exist for several years, at least, if not indefinitely. Based on this, they apparently wired millions of dollars to GAT and never actually insisted on having the deal recorded officially. It is extremely difficult to understand Plaintiffs' position to begin with, but their own allegations suggest that they believe that there is a binding oral agreement, and absolutely no documentation of it. Similarly, in one breath they complain that there was no formal documentation and then proceed to argue that terms including creation of fiduciary duties and obligations of return of specific, identifiable funds exist.

If Michigan law is determined to apply to these state claims, there is an additional barrier from Michigan's Statute of Frauds. Under MCLS § 566.132(1)(f), an assignment of a "thing in action," must be in writing for the terms to be enforceable. *Holland v. Fillmore*, 363 Mich. 38, 43 (1961). A "thing in action" has been defined as "a right to personal things of which the owner has not the possession, but merely a right of action for their possession" over. *Id*. The terms of the provision specifically provide "whether intended as a transfer for sale, for security, or otherwise." MCLS § 566.132(1)(f). Courts have determined:

> Michigan's version of the statute of frauds requires that an assignment of 'things in action' be 'in writing and signed with an authorized signature by the party to be charged with the agreement, contract, or promise' Thus under Michigan law, a written instrument, even if poorly drafted, creates an assignment if it clearly reflects the intent of the assignor to presently transfer 'the thing' to the assignee.

*Burkhardt v. Bailey*, 260 Mich. App. 636, 654 (1st Dist. 2004).

14

Here, Plaintiffs appear to be arguing that GAT purchased a ship and assigned part of its interest in that ship to Plaintiffs. If that is the case, then this would place the alleged agreement into the purview of 566.132(1)(f) and therefore require a written agreement. By Plaintiffs' admission in paragraph 45 Defendant Syllantavos "began making a series of unfulfilled promises to further memorialize and formally document the new separate stand-alone joint venture partnership that were consistently followed by more delays and additional excuses." Doc. No. 1, ¶ 45. Plaintiffs themselves acknowledge in their own complaint that there is not sufficient written agreement over a subject matter that requires a written agreement. Either there is no written contract, and therefore the Statute of Frauds applies, or there is one which does not clearly describe the intent to transfer, thereby failing the Statute of Frauds. If there was a contract that both said what Plaintiffs claim and could satisfy the statute, the complaint leaves it out. Because the complaint attempts to allege a contract subject to the Statute of Frauds without putting forward a written agreement that would satisfy it, they may not proceed past the pleading phase.

For the foregoing reasons, Plaintiffs should be barred from asserting claims that stem from an alleged contract, including Counts III, IV, V, VI, VIII, XI, and XIII under the statute of frauds. In the alternative, if this Honorable Court believes that it is inappropriate to raise the statute of frauds at this stage, Defendants respectfully ask for leave to amend their answers to raise the statute there.

## **CONCLUSION**

For the foregoing reasons, Defendant GAT respectfully requests that this Court grant its Motion for Judgment on the Pleadings pursuant to Fed Rules Civ Proc R 12(c), dismiss Plaintiff's claims in I-XI and XIII in their entirety with prejudice, and grant such other relief as the Court deems just and proper.

Dated: February 12, 2026          Respectfully Submitted,

         By: */s/ Gabriel W. Slater*
         Gabriel W. Slater
         Illinois Bar No. 6339692
         Hicks Johnson PLLC
         353 N. Clark Street, Suite 1760
         Chicago, Illinois 60654
         (312) 530-7060
         gslater@hicksjohnson.com
         *Attorney for Defendants*

         */s/ George M. Chalos*
         George M. Chalos
         Chalos & Co, P.C.
         55 Hamilton Ave
         Oyster Bay, NY 11771
         (516) 714-4300
         gmc@chaloslaw.com
         *Pro Hac Vice Attorney for Defendants*

         */s/ Benjamin Robinson*
         Benjamin Robinson
         Chalos & Co, P.C.
         7210 Tickner Street
         Houston, TX 77055
         (713) 574-1133
         brobinson@chaloslaw.com
         *Pro Hac Vice Attorney for Defendants*

## CERTIFICATE OF SERVICE

The undersigned certifies that on February 12, 2026, a true and correct copy of the foregoing **Defendant Global American Transport, LLC's Motion for Judgment on the Pleadings** was electronically filed with the Clerk of the Court for the Northern District of Illinois using the CM/ECF system.

/s/ *Gabe Slater*