**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| TODD MOILANEN and NICHOLAS TALMERS, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | 25 C 13515 |
| | ) | |
| DIMITRI SYLLANTAVOS, TODD MASSEY, and GLOBAL AMERICAN TRANSPORT LLC, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION**

**CHARLES P. KOCORAS, District Judge:**

Plaintiffs Todd Moilanen and Nicholas Talmers bring this thirteen-count action against Defendants Dimitri Syllantavos, Todd Massey, and Global American Transport LLC ("GAT"), arising from an alleged scheme to induce Plaintiffs to wire more than $3.3 million toward the acquisition of ownership interests in two ocean shipping vessels, and then to divert those funds to other purposes. Before the Court are three motions for judgment on the pleadings under Federal Rule of Civil Procedure 12(c), one filed by each Defendant. Because the motions overlap substantially and incorporate one another by reference, the Court resolves them together. For the following reasons, GAT's motion [26] is denied, Massey's motion [27] is granted in part and denied in part, and Syllantavos's motion [28] is granted in part and denied in part.

**BACKGROUND**

The following facts are drawn from the Complaint and accepted as true for purposes of these motions. The Court draws all reasonable inferences in Plaintiffs' favor.

Plaintiffs are residents of Michigan. GAT is a Delaware limited liability company that operates a dry-bulk ocean shipping business from Chicago, Illinois, with roughly thirty chartered vessels. Syllantavos is GAT's President and Chief Executive Officer, and Massey is its Chief Financial Officer.

In early 2022, Syllantavos approached Plaintiffs about an opportunity to acquire and jointly own two dry-bulk vessels, the MV GAT Feeling and the MV GAT Father (the "Vessels"). He described the opportunity as a new venture separate and independent from GAT's existing business, in which he would participate personally alongside Plaintiffs and any other investors, with the participants sharing in the profits the Vessels generated in proportion to their contributions.

Syllantavos made a series of representations to induce Plaintiffs' participation. He represented that Plaintiffs' funds would be used only by the new joint venture and only for the purchase of the Vessels and necessary shipowner expenses; that Plaintiffs would receive documented ownership interests proportionate to their investments; that separate holding entities would be formed once acquisition costs were known, structured to obtain favorable tax treatment; and that neither he nor GAT needed outside capital, as he was investing his own funds and extending an invitation rather than

soliciting an investment. Syllantavos represented that GAT was an established and profitable operator with annual revenues exceeding $100 million, Earnings Before Interest, Taxes, Depreciation, and Amortization ("EBITDA") exceeding $20 million, and assets exceeding $40 million. And he represented that he would personally oversee, protect, steward, and manage Plaintiffs' investments, and would act as a trusted fiduciary and prudent manager.

On March 1, 2022, Talmers wired $600,000 pursuant to wire instructions Syllantavos provided.

In October 2022, Syllantavos furnished Plaintiffs a Memorandum of Agreement between GAT and the Vessels' seller, under which the lender proposed to combine ownership of the two Vessels so that they could be collateralized together, yielding a reduction of roughly three percent in the interest rate and annualized savings of approximately $400,000 for the first year. On October 20, 2022, Syllantavos advised Plaintiffs that a deposit of $2,537,500 had been wired to the escrow agent and that the balance had to be assembled by October 28. He told Plaintiffs that the exact shareholding and equity figures would be known immediately after the closing date, and that the legal documents among the participants would be finalized after closing, when the details were settled.

On November 3, 2022, Syllantavos wrote that closing was expected on November 10 and he needed Plaintiffs to wire their participations by November 7. That same day, Syllantavos advised Plaintiffs that he retained Stephen Flott of Flott & Co.,

a premier tax advisor, to design the ownership structure, but that the structure would not be in place the following week, and he identified the total equity required for both Vessels as $11,213,991. Syllantavos told Plaintiffs that formal documents would be prepared to memorialize the venture, and that if they waited for that documentation before wiring their funds, the opportunity would be lost. On November 7, Talmers wired an additional $400,000 and Moilanen wired $1,121,399, in each case pursuant to wire instructions Syllantavos provided.

On December 6, 2022, Syllantavos sent Plaintiffs signed receipts stating that the sums received represented the recipient's participation in the acquisition of the MV GAT Feeling and the MV GAT Father. The receipts further stated that participation was "in accordance to further terms and conditions to be agreed between the management of GAT and said above Investor," and that investors would inform GAT of the legal entity to be used for their respective shareholding. Dkt. # 1, ¶¶ 42, 44.

On January 25, 2023, Syllantavos provided Plaintiffs a memorandum from Flott & Co. P.C. attorneys recommending a corporate and tax structure, together with a diagram of the recommended structure. He again assured Plaintiffs that the arrangement would be honored and memorialized. Thereafter Syllantavos made a series of unfulfilled promises to further memorialize and formally document the joint venture, and provided placating financial summaries.

Plaintiffs extended additional funds. On December 11, 2023, Moilanen loaned GAT $1,000,000, evidenced by a written promissory note under which principal and

interest came due on June 11, 2024. GAT made partial interest payments between January and November 2024 but did not repay the principal, and Moilanen served notice of default on January 9, 2025. Talmers separately loaned Syllantavos $200,000, on which no payment of interest or principal has been made. In total, Moilanen transferred $2,121,399 and Talmers transferred $1,200,000, for a combined $3,321,399.

Plaintiffs allege that Defendants never intended to apply the funds as promised, and instead used them to pay existing debts, to fund distributions to themselves, and to "rob Peter to pay Paul." Dkt. # 1, ¶ 39. Rather than segregate Plaintiffs' money or hold it in trust, Defendants immediately commingled it and began applying it to GAT's obligations. The holding companies that took title to the Vessels were documented as wholly owned by GAT, and Defendants refinanced the Vessels without disclosing Plaintiffs' claimed interests. Defendants thereafter distributed cash from Vessel revenues without notice to or consent from Plaintiffs, in an amount of at least $2,774,000. No distributions were made to Plaintiffs at any time. Defendants also entered into undisclosed sale-and-leaseback transactions covering both Vessels, without repayment of Plaintiffs' claimed equity. Plaintiffs allege that Syllantavos misrepresented GAT's financial condition at the time he solicited their funds, and that Defendants operated a "shell game" among various entities. Dkt. # 1, ¶ 64.

When Plaintiffs sought information about their investments, Syllantavos convened video conferences at which he presented backdated and unaudited financial statements and speculative projections, and assured Plaintiffs their interests were

secure. As Plaintiffs pressed for bank records and other documentation, Syllantavos declined to produce them and conditioned any accounting on Plaintiffs' execution of nondisclosure agreements.

The Complaint asserts civil RICO claims under 18 U.S.C. § 1962(c) against Syllantavos (Count I) and Massey (Count II); fraud and fraud in the inducement against Syllantavos (Counts III and IV); breach of fiduciary duty against Syllantavos (Count V); aiding and abetting breach of fiduciary duty against Massey (Count VI); conversion against all Defendants (Count VII); civil conspiracy against Syllantavos and Massey (Count VIII); declaratory judgment as to all Defendants (Count IX); declaratory judgment as to Syllantavos (Count X); breach of express or implied contract against Syllantavos (Count XI); breach of the promissory note, brought by Moilanen only, against GAT (Count XII); and breach of loan contract, brought by Talmers only, against Syllantavos (Count XIII).

Each Defendant answered the Complaint and separately moved for judgment on the pleadings. Each seeks dismissal of Counts I through XI and Count XIII with prejudice under Rule 12(c). However, GAT's motion addresses the conversion and contract claims and expressly declines to brief the RICO claims, which are not pleaded against it. Massey's and Syllantavos's motions each address the RICO claims and incorporate GAT's conversion and contract arguments by reference. Plaintiffs filed separate responses in opposition to each motion, and Defendants replied.

## **LEGAL STANDARD**

Rule 12(c) permits parties to move for judgment on the pleadings after pleadings are closed. Fed. R. Civ. P. 12(c). A motion for judgment on the pleadings is reviewed under the same standard as a motion to dismiss under Rule 12(b)(6). *Schimandle v. Dekalb Cnty. Sheriff's Off.*, 114 F.4th 648, 654 (7th Cir. 2024). That is, the Court asks whether the challenged pleading "state[s] a claim for relief that is plausible on its face." *Andy Mohr Truck Ctr., Inc. v. Volvo Trucks N. Am.*, 869 F.3d 598, 609 (7th Cir. 2017).

In deciding Rule 12(c) motions, the pleadings include the complaint, answer, counterclaims, and any attached written instruments. *Citizens Ins. Co. v. Wynndalco Enters., LLC*, 70 F.4th 987, 995 (7th Cir. 2023). "Although we draw all reasonable inferences and facts in favor of the nonmovant, we need not accept as true any legal assertions." *Lodholtz v. York Risk Servs. Grp.*, 778 F.3d 635, 639 (7th Cir. 2015). The Court will enter judgment on the pleadings only if "it is beyond doubt that the nonmoving party cannot prove facts sufficient to supports its position and that the movant is entitled to relief." *Citizens Ins. Co.*, 70 F.4th at 995; *see also Forseth v. Vill. of Sussex*, 199 F.3d 363, 368 (7th Cir. 2000) ("[T]he complaint should merely narrate a claim: Having specified the wrong done to him, a plaintiff may substitute one legal theory for another without altering the complaint. A complaint may not be dismissed [under Rule 12(c)] unless it is impossible to prevail under any set of facts that could be proved consistent with the allegations." (cleaned up)).

Where, as here, a RICO claim is predicated on mail or wire fraud, the heightened pleading standard of Rule 9(b) applies. *Menzies v. Seyfarth Shaw LLP*, 943 F.3d 328, 338 (7th Cir. 2019). Rule 9(b) requires a party alleging fraud to "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). This means the complaint must describe the "who, what, when, where, and how" of the alleged fraud. *United States ex rel. Presser v. Acacia Mental Health Clinic, LLC*, 836 F.3d 770, 776 (7th Cir. 2016). In cases involving multiple defendants, Rule 9(b) requires the plaintiff to "plead sufficient facts to notify each defendant of his alleged participation in the scheme." *Goren v. New Vision Int'l, Inc.*, 156 F.3d 721, 726 (7th Cir. 1998).

## DISCUSSION

### I. Preliminary Matters

At the outset, the Court addresses several issues with Defendants' motions. As to Counts III, IV, V, VI, VIII, IX, and X, Defendants advanced no developed argument. Perfunctory and undeveloped arguments are waived, and it is not the Court's task to research and construct the parties' positions for them. *Draper v. Martin*, 664 F.3d 1110, 1114 (7th Cir. 2011); *Kramer v. Banc of Am. Sec., LLC*, 355 F.3d 961, 964 n.1 (7th Cir. 2004). To the extent Defendants respond for the first time in their reply briefs that certain counts require no separate treatment because each depends on the RICO, conversion, or contract claims, that argument fails for two reasons. First, "[a]rguments raised for the first time in a reply brief are waived." *Laborers' Pension Fund v. W.R. Weis Co.*, 879 F.3d 760, 768 (7th Cir. 2018). Second, the argument fails on its own

terms: the conversion and contract claims survive, as explained below, and the remaining counts do not depend on the survival of the RICO claims.

The only claims pleaded directly against GAT are conversion (Count VII), declaratory judgment (Count IX), and breach of the promissory note (Count XII). GAT briefs only the conversion and contract claims against Syllantavos only (Counts XI and XIII) in any developed manner; it does not brief Count IX, and Count XII appears in no motion's request for relief. Massey is named in Counts II, VI, VII, VIII, and IX, and briefs Counts II and VII. Syllantavos is named in Counts I, III, IV, V, VII, VIII, IX, X, XI, and XIII, and briefs Counts I and VII while incorporating GAT's contract arguments.

These mismatches matter. Although the Court may consider an argument advanced by one Defendant to the extent it applies equally to another, *Akpulonu v. McGowan*, 2004 WL 2034084, at *1 (N.D. Ill. 2004), a defendant has no standing to seek dismissal of a count pleaded solely against a co-defendant. *Walker v. Three Angels Broad. Network, Inc.*, 2012 WL 4088844, at *3 (S.D. Ill. 2012) (holding that a defendant named solely in Count I lacks standing to move to dismiss Count IV); *Abbott v. Vill. of Winthrop Harbor*, 1996 WL 521403, at *2 (N.D. Ill. 1996) (denying a village's motion to dismiss a count alleged against a different defendant). The Court therefore denies GAT's motion as to Counts I through VI, VIII, X, XI, and XIII, because GAT lacks standing to seek dismissal of claims asserted solely against its co-defendants. For the same reason, the Court denies Massey's motion as to Counts I, III,

IV, V, X, XI, and XIII, and Syllantavos's motion as to Counts II and VI. The Court denies the motions on independent grounds as well, as explained below.

Finally, should the parties file further briefing in this case—on summary judgment, for example—the Court encourages them to submit a single brief rather than separate filings.[1] The Court routinely grants motions to exceed the fifteen-page limit of Local Rule 7.1.

## II. RICO Claims (Counts I and II)

Counts I and II allege violations of 18 U.S.C. § 1962(c) against Syllantavos and Massey, respectively. To state a claim under that subsection, a plaintiff must allege the conduct of an enterprise through a pattern of racketeering activity. *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985). A civil plaintiff must further allege injury to business or property by reason of the violation, which requires both but-for and proximate causation. 18 U.S.C. § 1964(c); *Ratfield v. U.S. Drug Testing Laby's, Inc.*, 140 F.4th 849, 852 (7th Cir. 2025).

At the outset, the Court notes that the enterprise sections of both RICO motions quote and analyze Section 1962(a), which prohibits the investment of income derived from racketeering. Counts I and II are pleaded under Section 1962(c). The Court analyzes the claims as pleaded. Defendants' replies proceed under the correct

[1] The Court further notes that Massey's motion [27] and Syllantavos's motion [28] are nearly identical. All three Defendants are represented by the same two firms, and the same three attorneys appear on the signature block of each motion.

subsection. Defendants challenge the enterprise, the predicate acts, and the pattern. The Court addresses each.

**A. Enterprise**

Defendants argue that Plaintiffs have failed to plead an enterprise distinct from the RICO persons. The Court disagrees.

RICO defines an enterprise to include any "group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). The Supreme Court has emphasized that the definition is expansive and that an association-in-fact enterprise requires only three structural features: a purpose, relationships among those associated with the group, and longevity sufficient to permit the associates to pursue the enterprise's purpose. *Boyle v. United States*, 556 U.S. 938, 944, 946 (2009). *Boyle* expressly rejected the proposition that an association-in-fact must possess a hierarchy, fixed roles, or any structural feature beyond those three. *Id*. at 948.

Count I alleges that GAT and the various affiliated entities formed by Defendants are collectively an enterprise engaged in activities affecting interstate commerce, and that Syllantavos is employed by or associated with that enterprise. Count II pleads the same as to Massey. The incorporated allegations describe Defendants as associated in fact and acting in concert through GAT and through various other legal entities, domestic and foreign, used as part of the scheme. That pleads a purpose, relationships, and a course of conduct spanning more than a year. The enterprise element is adequately pleaded.

**B. Predicate Acts**

Where a RICO claim rests on mail or wire fraud, the predicate acts must be pleaded with the particularity Rule 9(b) demands. *Menzies*, 943 F.3d at 338. Defendants direct their challenge to paragraph 77 of the Complaint, which recites the elements of mail and wire fraud, and to paragraphs 84 and 93, which allege in identical terms that "Defendants committed multiple related acts of mail fraud and wire fraud." Dkt. # 1, at ¶¶ 77, 84, 93. Standing alone, those paragraphs would not satisfy Rule 9(b). But they do not stand alone. Counts I and II each incorporate paragraphs 1 through 78 by reference. The Court therefore assesses particularity against the factual narrative pleaded into each count, not against the summary paragraphs in isolation.

**i. Syllantavos**

The Complaint identifies Syllantavos as the speaker of the representations said to have induced Plaintiffs' transfers. It alleges that in 2022 he represented that Plaintiffs' funds would be used only for the purchase of the Vessels and necessary shipowner expenses, that documented ownership interests would follow, and that separate entities would be formed to hold them. It alleges he represented that GAT's revenues exceeded $100 million and its EBITDA exceeded $20 million. It alleges these representations were false when made, that Defendants never intended to apply the funds as promised, and that Syllantavos knowingly misrepresented GAT's financial condition at the time of solicitation.

The Complaint further identifies particular communications by date and content: the October 2022 Memorandum of Agreement and accompanying financing representation; the October 20, 2022 statement regarding a $2,537,500 escrow deposit and an October 28 funding deadline; the November 3, 2022 statements concerning the anticipated closing and wire instructions, the tax structuring engagement, and the total equity figure of $11,213,991; the December 6, 2022 receipts; the January 25, 2023 tax memorandum; and the video conferences at which backdated financial statements were presented. It identifies the medium in each instance and the transfers that followed.

Syllantavos objects that the Complaint does not identify what was fraudulent about certain of these communications, pointing to the November 3, 2022 message regarding tax structuring. The objection misconceives the predicate. A communication need not itself be false to serve as a mail or wire fraud predicate; it is enough that it was made in furtherance of a scheme to defraud. *Schmuck v. United States*, 489 U.S. 705, 714–15 (1989). The falsity is pleaded elsewhere, and these communications are alleged to have advanced the scheme and induced the transfers. Count I satisfies Rule 9(b).

**ii. Massey**

The allegations concerning Massey are considerably thinner. He is identified as GAT's Chief Financial Officer. The Complaint alleges that Syllantavos made his representations "with the full knowledge and consent of Defendant Massey acting together in a concerted effort to obtain wire transfers of funds from the Plaintiffs." Dkt.

# 1, ¶ 37. Beyond that, Massey appears in the narrative only as one of the "Defendants" collectively.

The Complaint does not allege that Massey made any representation, authored or sent any communication, provided any wire instruction, or took any identified act in furtherance of the scheme. Rule 9(b) requires that each defendant be informed of the fraudulent conduct attributed to him; a plaintiff may not discharge that obligation by attributing conduct to the defendants as a group. *Vicom, Inc. v. Harbridge Merch. Servs., Inc.*, 20 F.3d 771, 778 (7th Cir. 1994).

Plaintiffs' opposition brief does not supply what the Complaint omits. The representations the brief recites are Syllantavos's, joined to Massey by the assertion that they were made on behalf of Defendants collectively and in concert. The predicate-act list in the brief describes the wire instructions as having been provided by "Defendants," where the Complaint attributes them to Syllantavos. Argument in a brief cannot amend a pleading. Count II does not satisfy Rule 9(b). Count II is independently deficient under Rule 9(b) for failure to plead any predicate act committed by Massey.

**C. Pattern**

Both counts fall short on the pattern element. A pattern requires at least two predicate acts within ten years, a relationship among them, and continuity. *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 238 (1989). Relatedness is not seriously in dispute; the alleged acts share a purpose, a method, the same participants, and the same victims.

Continuity is another matter; it may be closed-ended or open-ended. *H.J. Inc.*, 492 U.S. at 241–42. Plaintiffs assert both.

**i. Closed-ended continuity**

Closed-ended continuity requires a series of related predicates extending over a substantial period. *Id*. at 242. Duration is necessary but not sufficient. The Seventh Circuit weighs the number and variety of predicate acts, the length of time over which they occurred, the number of victims, the presence of separate schemes, and the number of distinct injuries. *Morgan v. Bank of Waukegan*, 804 F.2d 970, 975 (7th Cir. 1986); *Midwest Grinding Co. v. Spitz*, 976 F.2d 1016, 1023–24 (7th Cir. 1992). The court of appeals has not hesitated to find closed periods of several months to several years insufficient. *Roger Whitmore's Auto. Servs., Inc. v. Lake Cnty.*, 424 F.3d 659, 673 (7th Cir. 2005).

The parties dispute the length of the closed period. Plaintiffs date the scheme from March 2022 through late 2024, relying on the December 2023 promissory note and the 2024 personal loan as the final predicate acts. Defendants respond that those transfers are not pleaded as part of the scheme at all. Defendants have the stronger reading. The Complaint pleads the note and the loan as contract claims, alleging their existence, their terms, and their breach. It does not allege that any misrepresentation was made to obtain either advance. Absent an alleged falsehood employed to procure them, the transfers are not acts of wire fraud.

The Court need not resolve the point, however, because continuity fails on either measure. If the loans are excluded, the alleged scheme runs from March 2022 to the January 2023 tax memorandum. A closed period of roughly ten months is plainly insufficient. If they are included, the period extends to 2024, and every remaining factor still cuts against a pattern.

There is a single scheme, directed at a single objective: obtaining Plaintiffs' funds for the acquisition of two vessels. There are two victims, who were solicited together, acted in concert, and suffered the same injury in the same manner. The predicate acts are few and uniform—wire transfers and the communications surrounding them—and wire fraud is a disfavored basis for establishing a pattern in this circuit, precisely because ordinary commercial dealing is conducted by wire. M*idwest Grinding*, 976 F.2d at 1025. And there is a single type of injury: the loss of the funds transferred and of the ownership interests they were to secure.

Plaintiffs respond that Defendants employed the same scheme against other victims. That allegation appears in the Complaint in a single sentence: "The Defendants used the same scheme to obtain wire transfers from other victims as well." Dkt. # 1, ¶ 38. The Complaint identifies no other victim, no communication directed at any other victim, no date, and no amount. The allegation is nothing more than a conclusion, one the Court is not required to accept it as true. Nor could an allegation pleaded at that level of generality supply a predicate act consistent with Rule 9(b). Set aside, the victim count remains two.

What the Complaint describes is a single scheme, executed against two coordinated victims over a defined period, by a single disfavored predicate type, producing one kind of injury. The Seventh Circuit has consistently held that such allegations do not establish closed-ended continuity, however substantial the sums involved. *See Roger Whitmore's*, 424 F.3d at 673–74; *Midwest Grinding*, 976 F.2d at 1024–25; *Menzies*, 943 F.3d at 338–39.

**ii. Open-ended continuity**

To plead open-ended continuity, a plaintiff must allege specific facts that show a threat of repetition in the future. *See H.J. Inc.*, 492 U.S. at 241–42; *Vicom*, 20 F.3d at 782. *Vicom* itself instructs that a scheme with a clear and terminable goal has a natural ending point and cannot support a finding of open-ended continuity. *Id.* The scheme Plaintiffs describe had such a goal: to obtain their funds for the acquisition of the Vessels, draw the equity out of those Vessels, and dispose of them. Plaintiffs allege that the objective was accomplished—the refinancing and sale-and-leaseback transactions were executed, the revenues distributed, and their claimed interests extinguished. A completed scheme supports no inference of repetition.

Plaintiffs' contention that fraud is Defendants' regular way of doing business appears in their opposition briefs but not in the Complaint. What the Complaint alleges is that GAT operates an ocean shipping business that uses interstate email, video conferencing, and wires, which describes essentially every modern commercial enterprise. Finally, the assertion that Defendants constitute a long-term association

existing for criminal purposes is a bare conclusion unsupported by pleaded facts. Counts I and II are dismissed without prejudice for failure to plead a pattern of racketeering activity.[2]

## III. Conversion (Count VII)

Count VII alleges common-law and statutory conversion against all Defendants and seeks treble damages under Mich. Comp. Laws § 600.2919a.

### A. Choice of Law

The parties briefed Michigan and Illinois law in the alternative without giving any consideration as to which of the two governs. For the reasons stated below, that order of operations is backwards and, on this record (or lack thereof), premature at this procedural posture. *See Gunn v. Cont'l Cas.*, 968 F.3d 802, 813 (7th Cir. 2020); *Nofsinger v. Jackson Nat'l Life Ins.*, 2021 WL 3077659, at *3 (N.D. Ill. 2021) ("The parties apply both Illinois and Michigan law to [the plaintiff's] claims, without any discussion of which state's law controls. Choice of law is a threshold issue, and therefore this Court must address whether Illinois or Michigan law applies before delving into the substance of the issues presented by the pending motions.").

A federal court sitting in diversity applies the choice-of-law rules of the forum state. *Sosa v. Onfido, Inc.*, 8 F.4th 631, 637 (7th Cir. 2021). Under Illinois's rules, the law of the forum governs unless (1) the parties agree otherwise or (2) a party

[2] The Court has jurisdiction over the remaining claims under 28 U.S.C. § 1332.

demonstrates an actual, outcome-determinative conflict with another state's law. *Id*. The party seeking the choice-of-law ruling carries the burden of showing that conflict. *Id*.

None of the Defendants explicitly requested a determination let alone carried the burden. Rather, GAT's motion sets out the elements of conversion under both states' law and argues that it prevails under each, and its reply reduces the point to a single sentence: "neither party believes that the outcome will be different based on which state's law applies." Dkt. # 34, at 5. Plaintiffs take the mirror-image position, contending that their claim survives whichever body of law supplies the elements. But an assertion that two states' standards run parallel, coupled with a claim of victory under both, is insufficient to establish an outcome-determinative difference. *See*, *e.g.*, *Sosa*, 8 F.4th at 637. And where the parties have declined to develop the analysis, it is not the Court's task to research and construct the parties' positions for them. *Draper*, 664 F.3d at 1114; *Kramer*, 355 F.3d at 964 n.1; *Patton v. Chicago Heights*, 2010 WL 1813478, at *2 (N.D. Ill. 2010) ("It is not for the court to develop arguments for a party." (collecting cases)).

Ordinarily, that failure of proof would resolve the question by default, leaving Illinois law to govern as the law of the forum. Two considerations give the Court pause before taking that step. The first is that the premise on which the default rests appears to be mistaken. Michigan's statutory conversion provision carries treble damages and attorney fees, Mich. Comp. Laws § 600.2919a, and Illinois offers no comparable

remedy. The parties' shared assurance that nothing turns on the choice is difficult to square with the relief Count VII actually demands, and the Court is reluctant to foreclose that relief neither side examined.

The second consideration is that the pleadings alone do not supply the answer to the choice of law inquiry. Illinois resolves conflicts in tort under the most-significant-relationship test of the Restatement (Second) of Conflict of Laws, weighing where the injury and the conduct causing it occurred, the parties' domiciles and places of business, and where the relationship between them is centered. *See Gunn*, 968 F.3d at 809.

In cases sounding in fraud, where the situs of the injury tends to be nebulous, the place at which the representations were made counts for more than the place at which the financial loss was ultimately felt. *First Nat'l Bank v. Heuer*, 702 F. Supp. 173, 176 (N.D. Ill. 1988). Measured against those factors, the Complaint offers very little as to this inquiry. Its connection to Michigan consists of Plaintiffs' domicile and the origin of the wire transfers, and it is silent as to where the representations were made or received, where the agreement was struck, where performance was to occur, and where the injury was sustained. A court may resolve the question on the pleadings only when every fact bearing on it appears within them. When the analysis reaches beyond the complaint, the answer, and the attached exhibits, Rule 12(d) requires that the motion be converted to one for summary judgment and the parties be given the opportunity to submit supporting materials. GAT only challenges the sufficiency of the conversion allegations based on the four corners of the complaint. It is for that reason that the

question is ordinarily taken up on a more complete record. *Hartman v. Meta Platforms, Inc.*, 2024 WL 4213302, at *10 (S.D. Ill. 2024) ("[T]he Court will defer consideration of the choice-of-law issue pending at least some discovery and further briefing under Rule 56[.]"); *Hartford Fire Ins. v. Maynard*, 2002 WL 256800, at *5 (N.D. Ill. 2002) (declining to resolve the choice-of-law issue when the necessary facts are undeveloped at motion to dismiss stage).

The Court accordingly leaves the question for another day. The parties should be prepared to brief choice of law at summary judgment on a developed record.

## IV. Contract Claims (Counts XI and XIII)

Count XI alleges breach of an express or implied contract against Syllantavos concerning the formation of a separate joint venture. Count XII alleges that Moilanen loaned GAT $1,000,000 pursuant to the terms of a written promissory note that GAT breached. Count XIII alleges that Talmers loaned Syllantavos $200,000 under a loan contract that Syllantavos breached. GAT's motion only makes arguments related to Counts XI and XIII, to which GAT is not a party.[3] Defendants argue that no enforceable contract is alleged and that the Statute of Frauds bars the claims.

At the outset, the Court notes that the choice-of-law question addressed in Section IIIA extends to these claims as well. Illinois resolves conflicts in contract under the most-significant-relationship analysis of the Restatement (Second) of Conflict of

[3] *See* Section I.

Laws. *Nofsinger v. Jackson Nat'l Life Ins.*, 2021 WL 3077659, at *3 (N.D. Ill. 2021). Neither side has undertaken that analysis and the question remains open. Because "Illinois and Michigan contract law do not appear to substantively differ," *id*. (citing *Louisiana Firefighters' Ret. Sys. v. N. Tr. Invs., N.A.*, 312 F.R.D. 501, 508 (N.D. Ill. 2015)), the Court will run through the parties' arguments on this issue. However, its analysis stops short of whether specific provisions unique to Michigan's statutes of frauds applies to this case as the parties have not decided which states' law applies.

**A. Formation**

A contract requires an offer, acceptance, consideration, and a meeting of the minds on essential terms. Generally, an agreement that leaves essential terms to future negotiation is an unenforceable agreement to agree. *See A.T.N., Inc. v. McAirlaid's Vliesstoffe GmbH & Co., KG*, 2008 WL 696916, at *6 (N.D. Ill. 2008), *aff'd*, 557 F.3d 483 (7th Cir. 2009).

Defendants' showing is drawn largely from the Complaint itself, and it is not insubstantial. Plaintiffs allege that the entity structure "would be finalized and documented" once acquisition costs were known (Dkt. # 1, ¶ 20); that Syllantavos advised the exact shareholding and equity figures would be known only after closing, with legal documents finalized afterward; that formal documents would later be prepared to memorialize the venture; that the December 2022 receipts made participation subject to "further terms and conditions to be agreed" (*id*. ¶¶ 42, 44); and

that a series of unfulfilled promises to memorialize followed. Taken together, these allegations supply a genuine argument that essential terms remained open.

And yet, the allegations do not carry the motions at this stage. The Complaint also alleges terms of considerable specificity: that Plaintiffs' funds would be used solely to acquire ownership interests in two identified vessels; that Plaintiffs would hold documented interests proportionate to their investments measured against the acquisition cost; that Syllantavos would manage the acquisition and the chartering through GAT; and that profits would be shared in the same proportion. The total equity required was stated. And Plaintiffs allege they rendered full performance by wiring the funds as directed.

That an agreement contemplates further documentation does not render it unenforceable, and Michigan law disfavors avoiding contractual obligations on indefiniteness grounds. *See Opdyke Inv. Co. v. Norris Grain Co.*, 413 Mich. 354, 360 (1982). Courts are particularly reluctant to do so where a party has rendered performance. *See*, *e.g.*, *In re Cent. Ill. Energy Coop.*, 526 B.R. 786, 797 (Bankr. C.D. Ill. 2015); *BI3, Inc. v. Hamor*, 2011 WL 1231156, at *8 (N.D. Ill. 2011) ("[T]he statute of frauds does not bar recovery under a contract where one side has fully performed his contractual obligations.").

Plaintiffs' allegations are susceptible to more than one reading. On a motion for judgment on the pleadings the Court draws the inference in Plaintiffs' favor. Whether a meeting of the minds occurred is ordinarily a question of fact, and this is not the

exceptional case permitting its resolution on the pleadings. The argument is better presented on a developed record.

**B. Statute of Frauds**

The Statute of Frauds is an affirmative defense. It supports judgment on the pleadings only where its applicability appears on the face of the complaint.

Defendants invoke the one-year provision, arguing that a multi-year vessel venture could not be performed within a year. Mich. Comp. Laws § 566.132(1)(a); 740 ILCS 80/1. Both Michigan and Illinois construe the provision narrowly: if performance within one year is possible, the statute does not apply, even where the parties expected the arrangement to extend longer. *Allen v. Giannecchini*, 2010 WL 8034236, at *6 (N.D. Ill. 2010); *Kaufman v. Eric Charles Designs, Ltd.*, 2014 WL 2351150, at *1 (Mich. Ct. App. 2014). Defendants have not identified any obligation under the alleged agreement incapable of performance within a year. Their textual hook is the Complaint's reference to annualized financing savings of roughly $400,000 "for the [first] year alone." Dkt. # 1, ¶ 29. That language describes projected interest savings from cross-collateralizing the Vessels; it says nothing about the time required to perform. Their remaining reliance is on the allegation that the venture would share in profits generated by the Vessels over time. That describes the fruits of the bargain, not the acts required to perform it.

The obligation alleged is to apply Plaintiffs' funds to the acquisition of ownership interests and to secure those interests. The Vessels were acquired within

weeks of the transfers. Performance within a year was not merely possible but, on Plaintiffs' account, partly accomplished. *BI3, Inc.,* 2011 WL 1231156, at *8 ("[T]he statute of frauds does not bar recovery under a contract where one side has fully performed his contractual obligations.").

## V. Leave to Amend

Leave should be freely given when justice so requires. Fed. R. Civ. P. 15(a)(2). Plaintiffs request leave to amend in the event any portion of the Complaint is found deficient. *See* Dkt. # 32, at 16; Dkt. # 33, at 15. No Defendant addressed the request in their reply brief. Plaintiffs have not previously amended and Defendants identify no prejudice. For the same reasons, Defendants' request for leave to amend their answers (Dkt. # 26, at 18) is also granted.

## CONCLUSION

For the foregoing reasons, the Court denies Defendant Global American Transport LLC's motion [26] in its entirety; grants in part and denies in part Defendant Todd Massey's motion [27]; and grants in part and denies in part Defendant Dimitri Syllantavos motion [28]. Counts I and II are dismissed without prejudice. Plaintiffs may file an amended complaint by September 2, 2026. If Plaintiffs should choose to stand on their original Complaint, they should file a status report notifying the Court of their decision by that date. If Plaintiffs do not file an amended complaint, Defendants are granted leave to file their amended answers by September 11, 2026.

It is so ordered.

Dated: August 12, 2026

Charles P. Kocoras
United States District Judge